UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VITRUM INDUSTRIES LTD.,<br><br>               Plaintiff,<br>v.<br>ARCADIA INC.,<br><br>               Defendant. | Case No. 20-00265-RSL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 7, 2021 |

This matter comes before the Court on plaintiff's Motion for Partial Summary Judgment Regarding Unpaid Invoices (Dkt. 29) and plaintiff's Motion for Summary Judgment to Dismiss Counterclaim (Dkt. 39).

The Court should deny both of plaintiff's motions because there are genuine disputes of material fact concerning contract formation, the essential terms of the contract(s), whether there was any breach or repudiation of the contract(s), and whether any breach or repudiation was justified.

Plaintiff has objected to a declaration from defense expert Jim Borders. (Dkt. 39 at 21-23). This Report and Recommendation does not rely on any of the evidence submitted by the defense concerning the opinions of Mr. Borders (Dkt. 44). The Court need not reach this issue, because summary judgment should be denied even if the Court does not consider evidence from Mr. Borders.

I. Summary Judgment Standard

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id.*

A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson,* 477 U.S. at 252. In this context, materiality means the fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original).

If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of their pleading; their response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). But, a "district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

II.   Factual Summary

A.  Facts and Justifiable Inferences Drawn in Favor of the Defendant

In 2016-2018, Nike was preparing to build a new structure on the campus of their world headquarters in Beaverton, Oregon -- with Hoffman as the general contractor, and Skylab as the architect ((Dkt. 40, Decl. of Isaac Prevost, Dkt. 40-2, at 13-25, Lawrence Ginsberg Dep.; Dkt. 46 at 2, Decl. of James Schladen; Dkt. 47 at 160-185, 302, Decl. of Daniel M. Hayes, Ex. H, specifications, dated 12-22-2016, and Ex. W). Plaintiff Vitrum is a glass supplier, and was pursuing the opportunity to be selected as the supplier of glass for the project by Arcadia, the defendant and cross-claimant. (Dkt. 40, Decl. of Isaac Prevost, Dkt. 41-1, at 3-9, Syed Kazim Dep.; Dkt. 47 at 52, Decl. of Daniel M. Hayes, Ex. C, Tara Brummet Dep.).

Defendant Arcadia is a window manufacturer that worked with Culver, a window installation subcontractor. Culver was a subcontractor on the Nike project with Hoffman, the general contractor. (Dkt. 40 at 3-8, Decl. of Isaac Prevost, Dkt. 40-4, Nathan Maroney Dep.). Arcadia communicated with individuals from Vitrum during 2016-2017,

as requested by Culver, to determine whether Vitrum would supply all of the glass for the project. (Dkt. 45 at 2-3, Decl. of Lawrence Ginsberg).

At an onsite glass review in August of 2016, Vitrum presented an insulated glass unit ("IGU") sample, with a thickness of ¼ inch, for consideration by Arcadia, Culver, Hoffman, and Nike. (Dkt. 47 at 100-124, Decl. of Daniel M. Hayes, Ex. E, Todd Barnes Dep.). Nike and Skylab were interested in flat glass, and the ¼ inch IGU would be a lower cost than initial estimates for the ¾ inch IGU. (*Id*., at 100-105; Dkt. 47 at 302-304, Ex. W, David McBride Dep.). Vitrum's ¼ inch IGU sample was estimated at a $720,000.00 savings for the project. (Dkt. 48 at 381-382, Decl. of Daniel M. Hayes, Ex. HH, email conversation, Todd Barnes, dated 2-14-2017).

In March 2017, Vitrum requested and received a credit application from Arcadia for orders. (Dkt. 47 at 29-30, 151-158, Ex. B, Ginsberg Dep., Ex. G, email and attachment). On April 3, 2017, Vitrum received from Arcadia a spreadsheet with types of glass, and the quantities Arcadia would need for the entire project. (Dkt. 45 at 2-3, 9-48, Decl. of Lawrence Ginsberg, Ex. A). Samantha Larson of Vitrum sent to Lawrence Ginsberg of Arcadia a "booking order" No. 46125 on July 26, 2017, referred to as "final"; it was written to cover the project; she asked Arcadia to review the booking order; neither Vitrum nor Arcadia signed the booking order. (Dkt. 45 at 3, Decl. of Lawrence Ginsberg; Dkt. 47 at 53-66, 284-288, Declaration of Daniel M. Hayes, Ex. C, Brummet Dep., and Ex. T, email conversation dated 7-26-2017 with booking order No. 46125). Between October 27, 2017 and January 15, 2018, Arcadia issued eight purchase orders. (Dkt. 45 at 3-4, 49-76, Decl. of Lawrence Ginsberg, Ex. B through I).

REPORT AND RECOMMENDATION - 4

On December 13, 2017, Syed Kazim of Arcadia emailed Samantha Larson of Vitrum and stated that Vitrum should hold, and not process the first two purchase orders yet because -- Nike and Hoffman had not yet approved the flatness of the glass. (Dkt. 40, Decl. of Isaac Prevost, Dkt. 40-11 at 2-4; Dkt. 47 at 199-206, Ex. J, email string of conversations). On March 22, 2018 these two purchase orders were re-issued by Arcadia, and more purchase orders followed. (Dkt. 45 at 4, 49-76, Decl. of Lawrence Ginsberg, Ex. B through I). In April of 2018, Arcadia proposed a modified purchase order, but it was not accepted by Vitrum. (Dkt. 40, Decl. of Isaac Prevost, Dkt. 40-2, Ex. B, Ginsberg Dep. ¶ 15).

On May 22, 2018, Vitrum sent to Arcadia a specification review document, concerning requirements for glass. (Dkt. 46 at 2-3, Decl. of James Schladen; Dkt. 48 at 37-40, Decl. of Daniel M. Hayes, Ex. Z). The specification review document included a signature requirement: Vitrum stated that the general contractor (Hoffman) and/or owner (Nike) would need to sign, along with Arcadia, and Culver. (Dkt. 46 at 2, Decl. of James Schladen; Dkt. 48 at 37-40, Decl. of Daniel M. Hayes, Ex. Z). The specification review document included a paragraph that stated: "Please note, Vitrum will not proceed processing any future purchase orders until the terms listed above are approved and signed off by both the general contractor and/or owner and customer. By signing below, each party is accepting the amendments made within this document." (Dkt. 48 at 40, Declaration of Daniel M. Hayes, Ex. Z).

All the signatures were not provided. (Dkt. 41 at 3, Decl of Tara Brommet; Dkt. 46, Decl. of James Schladen). Nathan Moroney, on behalf of Hoffman, stated that the general contractor did not sign – because "[i]t would be uncommon for us to sign a

document like this with a third-tier supplier when we have a contract with a subcontractor that's actually providing and installing that material." (Dkt. 47 at 90, Decl. of Daniel M. Hayes, Moroney Dep.).

Vitrum, Arcadia, Culver, Hoffman, and Nike held meetings in an effort to resolve the situation, but Vitrum did not fill any additional purchase orders beyond the initial purchase orders of IGU's. (Dkt. 45 at 4, 6-7, Decl. of Lawrence Ginsberg; Dkt. 46 at 2-3, Decl. of James Schladen). According to individuals who attended a meeting on June 11, 2018 -- when asked about the IGU's that had been ordered (beyond the purchase orders that had already been filled), Mr. Martini stated on behalf of Vitrum that -- "I can sell that glass all day long to other contractors." (Dkt. 46 at 3, Decl. of James Schladen; Dkt. 47 at 127, Decl. of Daniel M. Hayes, Todd Barnes Dep.; Dkt. 48 at 47, Decl. of Daniel M. Hayes, Ex. CC (letter from Todd Barnes of Culver, dated 6-12-2018)).

B. Contested Issues

Vitrum asserts it filled certain orders for IGU's and that was the extent of the contract with Arcadia. (Dkt. 29 at 6-7; Dkt. 39 at 11, 27; Dkt. 40, Decl. of Isaac Prevost, Dkt. 40-2, Ex. B, Ginsberg Dep.; Dkt. 47 at 132-45, Decl. of Daniel M. Hayes, Ex. F, Martini Dep.). Vitrum asserts that there was no contract for the entire project, because Nike and Hoffman had not confirmed the precise requirements for the flat glass, Arcadia proposed another purchase agreement in April 2018, leaving Vitrum with uncertainty about the specifications that would be required on any future shipments of IGU's. (*Id.*; Dkt. 39 at 11-14, 21-23; Dkt. 40, Decl. of Isaac Prevost, Dkt. 40-2, Ex. B, Ginsberg Dep. ¶ 15).

1    Vitrum alleges the purchase orders were a contract and the unpaid invoices
2 show that the contract was breached, but the contract did not have a durational term
3 that would cover the entire project. Dkt. 29 at 6-8. In the motion for partial summary
4 judgment (Dkt. 29), plaintiff seeks to recover $175,145.98, exclusive of interest, costs,
5 expenses, and attorney fees – which represents the alleged amount owed on the
6 invoices for the glass that was delivered, with a credit for damaged or defective IGU's.
7 (Dkt. 29 at 7; Dkt. 40, Decl. of Isaac Prevost, Dkt. 40-1 at 7-22, Ex. A, Kazim Dep.).
8    Arcadia asserts the parties agreed Vitrum would supply IGU's for the entire
9 project, with Vitrum as the sole glass supplier. (Dkt. 13, Answer and Counterclaim at 6-
10 11; Dkt. 34 at 13; Dkt. 43 at 10-23; Dkt. 47 at 100-129, Ex. E, Barnes Dep.). Arcadia
11 asserts that booking order No. 46125 contains the essential terms of the parties'
12 agreement. (Dkt. 47 at 55-82, Ex. C, Brummet dep.; Dkt. 47 at 135-145, Ex. F, Martini
13 Dep.). Arcadia disputes the contention that the proposed contract modification in April
14 2018 was an indication that Arcadia did not have an existing contract with Vitrum for the
15 entire project – Arcadia alleges that it proposed a modification of the existing contract,
16 but ultimately the proposal was rejected by Vitrum. Dkt. 43 at 14.
17    Arcadia's counterclaim alleges that it sustained damages due to Vitrum's failure
18 to fulfill the alleged contract for the entire project, resulting in delay of the IGU's being
19 provided for the project, added expense of procuring glass from a different vendor, and
20 the consequences of such follow-up efforts to replace the IGU's that Vitrum allegedly
21 agreed to supply. Arcadia claims it is entitled to an offset, and damages, based on
22 Vitrum's alleged repudiation of the alleged contract. (Dkt. 34 at 17-19). Arcadia's
23 position is that Vitrum repudiated, and it was not justified – because neither they, nor
24
25

1  Culver, ever told Vitrum they would refuse to pay for the IGU's being supplied by Vitrum

2  -- if Nike or Hoffman had concerns about the flatness of IGU's. (Dkt. 47 at 122-123,

3  Decl. of Daniel M. Hayes, Ex. E, Todd Barnes Dep.).

4      III.    Discussion

5      A. Washington Law Concerning the Existence of a Contract

6  State law governs contract formation. *Lowden v. T-Mobile USA, Inc.,* 512 F.3d

7  1213, 1217 (9th Cir. 2008). According to RCW 62A.2-102, the Uniform Commercial

8  Code, Article 2, applies to a contract between merchants for the sale of goods. Yet,

9  construction contracts are not uniformly subject to the UCC. *Spradlin Rock Products,*

10  *Inc. v. Public Utility Dist. No. 1 of Grays Harbor County,* 164 Wn. App. 641, 658-659

11  (2011). To determine whether a construction contract is subject to the UCC, the Court

12  should apply the predominant factor test. *Tacoma Athletic Club, Inc. v. Indoor Comfort*

13  *Systems, Inc.,* 79 Wn. App. 250, 256-259 (1995). The test is not whether there is a

14  mixing of services and goods, but whether the predominant factor, thrust, or purpose of

15  the transaction is the goods and the service is incidentally involved, or the service is the

16  predominant factor and the goods are incidentally involved. *Id.*

17  In this case, the plaintiff and defense contend that the UCC Article Two applies.

18  Dkt. 39 at 11; Dkt. 43 at 11. The Court should follow the UCC Article Two, because the

19  predominant factor, thrust, or purpose of the transaction at issue in this case is the sale

20  and purchase of the I.G.U.'s, which are products. *Tacoma Athletic Club, Inc. v. Indoor*

21  *Comfort Systems, Inc.,* 79 Wn App. at 256-259; *see also, U.S. ex rel. Bartec Industries,*

22  *Inc. v. United Pacific Co.,* 976 F.2d 1274, 1277 (9th Cir. 1992) (holding that a contract

23  for the fabrication and provision of steel beams -- but where the supplier was not

24

25

1  constructing or installing the steel, as part of a construction project -- was a contract for
2  goods, and would be analyzed under the UCC). Ordinarily a jury would resolve an issue
3  of fact concerning whether a transaction predominantly involves goods, or services; but,
4  if there is not a true factual dispute on this issue, the Court may decide as a matter of
5  law whether the contract is covered by the UCC Article Two. *Macanique C.N.C, Inc. v.*
6  *Durr Envtl., Inc.,* 304 F. Supp. 2d 971, 976-977 (S.D. Ohio, E.D. 2004).

7      The common law of contracts also applies, to the extent it does not conflict with
8  statutory provisions of the UCC. RCW 62A.1-103(b); *Syrovy v. Alpine Resources,* 122
9  Wn.2d 544, 549 (1993); *Gorge Lumber Co. v. Brazier Lumber Co.,* 6 Wn. App. 327, 334
10 (1972).

11     A genuine dispute concerning a material fact is presented when there is sufficient
12 evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v.*
13 *Liberty Lobby,* 477 U.S. 242, 252 (1986). For a jury to determine whether the plaintiff's
14 claims, or the defendant's counterclaims, and the respective defenses, have been
15 proved by the parties, the jury would need to decide if any contract was achieved, and if
16 so, what were the essential terms of that contract. *See, Vanalt Elec. Const. Inc. v. Selco*
17 *Mfg. Corp.,* 233 Fed. Appx. 105, 108 (3rd Cir. 2007) (reversing and remanding for a new
18 trial, holding the trial court erred by finding as a matter of law that certain terms were in
19 the parties' contract, and the trial court's instructions did not follow the UCC, as required
20 under Pennsylvania law); Washington Pattern Jury Instructions, Civil, WPI 300 (cases
21 where the contract falls under the UCC must have jury instructions that conform to the
22 UCC).

23
24
25

According to UCC Section 2-204(1), "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." RCW 62A.2-204(1). Even if the moment of the contract's making is uncertain, and even though terms are left open, if the parties have intended to form a contract and there is a "reasonably certain basis for giving an appropriate remedy", then under the UCC a contract has been formed. RCW 62A.2-204(2), (3); 1 UCC Pleading and Practice Forms (sample jury instruction) § 2:46, Formation of Contract.

"Whether the parties intend a written document to be a final expression of the terms of the agreement is a question of fact." *M.A. Mortenson Co., Inc. v. Timberline Software Corp.,* 140 Wn.2d 568, 579 (2000). According to RCW 62A.2-202, "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms. . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented: (a) by course of performance, course of dealing, or usage of trade". . . ." *See also,* RCW 62A.1-303, describing "course of performance", "course of dealing", and "usage of trade".

Under Washington common law, a contract is formed when the parties have objectively expressed mutual agreement to a contract's material terms. *Yakima County (West Valley) Fire Protection Dist. No. 12 v. City of Yakima,* 122 Wn.2d 371, 388 (1993); Contract Law and Practice, 25 Wash. Prac. § 2:7 (3d ed. 2020). "Mutual assent

is gleaned from the outward manifestations and circumstances . . . [of] the transaction. *Burnett v. Pagliacci Pizza, Inc.,* 196 Wn.2d 38, 50 (2020).

When one party agrees to sell a product to another party, the transaction is consensual and "subject matter which passes is to be determined by the intent of the parties as revealed by the terms of their agreement in light of the surrounding circumstances." *City of Everett v. Sumstand's Estate,* 95 Wn.2d 853, 855 (1981). The parties' subjective intentions are irrelevant. *Id.* When considering the objective manifestation of intent, the Court will "impute an intention corresponding to the reasonable meaning of a person's words and acts." *Id.* Therefore, if the person making the offer "judged by a reasonable standard, manifests an intention to agree in regard to the matter in question, that agreement is established." *Id.*

Even if the parties agree to an initial contract, mutual assent would be required to alter the contract. *Wagner v. Wagner,* 95 Wn.2d 94, 103 (1980) (modification requires consideration or a mutual change in obligations and rights); *see Tonseth v. Serwold,* 22 Wn.2d 629, 644-647 (1945) (modification of a contract must be shown by clear and convincing evidence).

If negotiations have reached the point where the parties agree to essential terms, but have not yet put those terms into a written instrument, then a contract may be formed. *Bell v. Hegewald,* 95 Wn.2d 686, 690-91 (1981); *Bharat Overseas Ltd. v. Dullen Steel Products, Inc., of Wash.,* 51 Wn.2d 685, 688-689 (1958). Yet, no contract is formed if the parties fail to have a meeting of the minds concerning any of the essential elements. *Lakeside Pump & Equipment, Inc. v. Austin Const. Co.,* 89 Wn.2d 839, 845 (1978); *Town of Selah v. Waldbauer,* 11 Wn. App. 749, 754-755 (1974).

The statute of frauds, under RCW 62A.2-201, provides:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) of this section but which is valid in other respects is enforceable:

(a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
(b) If the party against whom enforcement is sought admits in his or her pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
(c) With respect to goods for which payment has been made and accepted or which have been received and accepted.

In this case, the parties dispute whether a written contract was in place for supplying all IGU's for the entire project, or whether the parties orally agreed to the purchases that resulted in invoices for the IGU's that were delivered. (Dkt. 13, Answer and Counterclaim at 6-11; Dkt. 34 at 13; Dkt. 43 at 10-23; Dkt. 47 at 100-124, Ex. E, Barnes Dep.; Dkt. 29 at 7; Dkt. 40, Decl. of Isaac Prevost, Ex. A, Dkt. 40-1, at 7-22, Kazim Dep.)

REPORT AND RECOMMENDATION - 12

At oral argument, counsel for both parties acknowledged that the specifications for the glass were the subject of ongoing discussion, because there was communication from the owner (Nike) and the general contractor (Hoffman) expressing concern about whether Vitrum's ¼ inch IGU would meet their preferences regarding the flatness of the glass. (Dkt. 40-6 at 6, Ex. F, Dep. Of Thomas Martini; Dkt. 40-1 at 70-71, 80-82, 94-96, Dep. Of Syed Kazim; and Dkt. 40-8 at 7-5, ex. 3 to the Dep. Of Syed Kazim; Dkt. 37 at 33, 35, Declaration of Daniel M. Hayes, Ex. C, Brummet Dep.).

The plaintiff has not met its burden to show that there is a lack of a genuine dispute as to any material fact. The jury would be asked to decide whether the parties objectively expressed mutual agreement to a contract's material terms. RCW 62A.2-204(1); 62A.2-202; *Burnett v. Pagliacci Pizza, Inc.,* 196 Wn.2d 38, 50 (2020).

Taken in the light most favorable to the non-moving party, the defendant has shown that there was a course of conduct between the parties that led to the booking order No. 46125; from these facts, a reasonable jury could conclude by a preponderance of evidence that a contract for the entire project had been achieved. This is based on the booking order, sent as "final" by Vitrum (the party against whom enforcement is sought), and therefore a reasonable jury could find there was a "writing" under RCW 62A.2-201 (2); *see also, Urban Development, Inc. v. Evergreen Bldg. Products, LLC,* 114 Wn. App. 639, 651-652 (2002), *aff'd on other grounds,* 151 Wn.2d 534 (2004) (a memorandum memorializing an oral contract, but not signed by either party, satisfied the writing requirement for purposes of the statute of limitations). Taken in the light most favorable to the non-moving party, a reasonable jury could find the circumstances of the booking order sent by Vitrum to Arcadia on July 26, 2017 show

objective mutual assent to the essential terms of the contract for the entire project, by a preponderance of the evidence. RCW 62A.2-204(1); 62A.2-202; *City of Everett v. Sumstand's Estate,* 95 Wn.2d 853, 855 (1981).

### B.  Washington Law Concerning Repudiation

The defendant argues that after the contract was formed, plaintiff demanded assurances, and informed Arcadia of Vitrum's anticipated repudiation of the contract, when Vitrum confirmed on May 22, 2018 that it would not fulfill any orders if it did not receive signatures from Nike, Hoffman, Culver, and Arcadia, on the specification review document. (Dkt. 34 at 9-10, 12-17; Dkt. 40-2 at 28-31 (Ginsberg Decl.). Plaintiff argues that it was justified in demanding assurances from Arcadia, and the other companies involved in the project, because Nike and Hoffman continued to ask questions about the flatness of the glass. (Dkt. 40-6 at 6, Ex. F, Martini Dep.). Plaintiff argues that it had reason to demand assurances -- when it continued to produce glass under the specifications understood by the parties, Vitrum needed to know the IGU's would be accepted by Arcadia and paid for. (Dkt. 38 at 4-7; Dkt. 39 at 13-15, 22-23; Dkt. 50 at 9).

According to RCW 62A.2-609:

> (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he or she receives such assurance may if commercially reasonable suspend any performance for which he or she has not already received the agreed return.
>
> (2) Between merchants, the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

> (3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.
>
> (4) After receipt of a justified demand, failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

According to RCW 62A.2-610:

> When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may:
>
> (a) For a commercially reasonable time await performance by the repudiating party; or
>
> (b) Resort to any remedy for breach (RCW 62A.2-703 or 62A.2-711), even though he or she has notified the repudiating party that he or she would await the latter's performance and has urged retraction; and
>
> (c) In either case suspend his or her own performance or proceed in accordance with the provisions of this Article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods. (RCW 62A.2-704).

If a party repudiates a contract, the repudiation may be treated by the other party as a breach. *CKP, Inc. v. GRS Const. Co.,* 63 Wn. App. 601, 620 (1991). "An intent to repudiate may be expressly asserted or circumstantially manifested by conduct." *Alaska Pac. Trading Co. v. Eagon Forest Products, Inc.,* 85 Wn. App. 354, 365, *rev. denied*, 133 Wn.2d 1006 (1997), *quoting CKP, Inc. v. GRS Const. Co.,* at 620. A party may demand assurances in writing, but the demand must be sufficiently clear and there must be a reasonable basis for the party's assertion of insecurity; these are questions of fact unless reasonable minds can reach only one conclusion. *Alaska Pac. Trading Co.,* 85 Wn. App. 354, 364-365; *Penberthy Electromelt Intern. Inc. v. U.S. Gypsum Co.,* 38

REPORT AND RECOMMENDATION - 15

Wn.App. 514, 518-519 (1984); 1 UCC Pleading and Practice Forms (sample jury instructions) § 2:552: Right to Adequate Assurance of Performance, § 2:560: Anticipatory Repudiation Defined; *Sales: what constitutes "reasonable grounds for insecurity" justifying demand for adequate assurance of performance under UCC § 2-609*, 37 ALR 5th 459.

One issue that may arise with respect to repudiation, is whether the repudiation was justified by a material breach of the contract by the other party. *See generally, Manganaro Corp. v. HITT Contracting, Inc.,* 193 F. Supp. 2d 88, 96-97 (D. D.C. 2002) (changes in the payment methodology may go to the essence of a contract, and may justify a demand for assurances), *Bruner and O'Connor on Construction Law*, § 18:23, Anticipatory Repudiation. For example, "[i]f one party fail[s] to pay and fail[s] to supply necessary materials and equipment on time, and they become the cause of [the other party's] delayed performance . . . [they] may not recover damages for a delay of their own making." *Lovric v. Dunatov,* 18 Wn. App. 274, 284 (1977).

In this case, the plaintiff argues that defendant did not provide a signature on the booking order, and therefore the contract was an oral contract that covered only the invoiced amount of glass products. (Dkt. 47, Declaration of Daniel M. Hayes, at 44 Ex. C, Brummet Dep). The defendant argues that the parties agreed to a contract for the entire project, as shown by the course of conduct and that agreement was reached as to price, specifications, and duration. (Dkt. 43 at 16-29). Defendant contends the plaintiff repudiated the contract on May 22, 2018 by demanding that the owner and/or the general contractor sign the specification review document, and that if there was no

1  signature from the owner and/or general contractor, then the plaintiff would stop
2  providing glass. (Dkt. 43 at 16-29; Dkt. 48 at 37-40, Decl. of Daniel M. Hayes, Ex. Z).
3        There are genuine disputes of material fact regarding whether plaintiff was
4  justified in seeking assurances, and whether any repudiation of the contract occurred,
5  and if it occurred, whether it was justified. These are facts that can only be decided by a
6  jury. If the jury were to decide that a contract was formed, and the contract was for the
7  entire project, then the jury would also be asked to determine whether plaintiff was
8  justified in seeking assurances, and whether any repudiation was justified under the
9  circumstances. Therefore, plaintiff's motion for partial summary judgment concerning
10 defendant's counterclaim, and plaintiff's motion for summary judgment on its complaint,
11 should be denied.
12     IV.    CONCLUSION
13       The motions, and the claims, are intertwined.
14       The parties agree that: (1) Washington law applies to the substantive issues; (2)
15 plaintiff Vitrum supplied IGU's relating to seven purchase orders to Arcadia and certain
16 invoices were not paid.
17       To resolve this case, a jury would need to determine genuine disputes of material
18 facts concerning contract formation, and if any contract was formed, whether that
19 contract covered the purchase of IGU's for the entire project; if a contract was formed,
20 whether a breach of contract occurred; and if there was a breach or repudiation,
21 whether it was justified.
22       Based on the foregoing discussion, the undersigned recommends the Court deny
23 plaintiff's Motion for Partial Summary Judgment Regarding Unpaid Invoices (Dkt.29);
24
25

REPORT AND RECOMMENDATION - 17

and plaintiff's Motion for Summary Judgment to Dismiss Arcadia Inc.'s Counterclaim (Dkt. 39).

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **May 7, 2021,** as noted in the caption. **The parties must file any objections to the Report and Recommendation by May 4, 2021.**

Dated this 20th day of April, 2021.

Theresa L. Fricke
United States Magistrate Judge